UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

     Plaintiff,

vs                                       Case No: 05-80025

D-5, EARL JOHNSON,

     Defendant.

_____/

**ORDER**
(DOCUMENT #247)

## I.    INTRODUCTION

This matter is before the Court on Defendant Earl Johnson's Corrected Motion to

Exclude Alleged Declarations Against Penal Interest Allegedly Made By Timothy Dennis

O'Reilly ("O'Reilly") (Doc. #247). Defendant is charged with Conspiracy to Commit

Bank Robbery, in violation of 18 U.S.C. §§ 371 and 2113(a); Bank Robbery, in violation

of 18 U.S.C. §2113(a)(3); and Premeditated Murder, in violation of 18 U.S.C. §924(j).[1]

Defendant's motion is **DENIED**.

## II.    BACKGROUND

In 2004, O'Reilly served time in the Ryan Correctional Facility on unrelated

charges. During his incarceration, O'Reilly provided his cellmate, Barron Nix-Bey ("Nix-

Bey") with a detailed account of his involvement in a December 2001 murder and

---

[1]Defendant is not charged in Counts IV, V, and VI involving a similar robbery of a
different bank and armored car company.

robbery of the Dearborn Federal Credit Union ("DFCU").  Nix-Bey contacted the FBI.

When O'Reilly was transferred to the Macomb Correctional Facility at the request of

Federal officials, the Michigan Department of Corrections also transferred Nix-Bey.

With the assistance of state officials, the FBI arranged for Nix-Bey to tape record

O'Reilly at the Macomb Correctional Facility.

Nix-Bey wore a "wire" during a December 13, 2004 conversation with O'Reilly in

which O'Reilly spoke about the December 2001 robbery and murder at the DFCU in

great detail.  Among other things, O'Reilly informed Nix-Bey that he was one of six

participants in the robbery in which O'Reilly fired a shotgun that killed one of the guards.

O'Reilly implicated his co-defendants and referred to them by name.  O'Reilly stated

that this Defendant worked at Ford Motor Company, and provided information that he

believed the ATMs near Ford's headquarters would have a large amount of cash in

them because Ford's profit sharing checks had been issued.  In addition, O'Reilly stated

Defendant conducted surveillance of the DFCU prior to the robbery and recruited two of

his co-workers to participate in the robbery.  *See* Def. Exh. A at 17-19, 35-36, 40-41.

According to Defendant, the Government originally said it would not seek to

admit O'Reilly's statements against Defendant, but the Government changed its

position.  Defendant requests that O'Reilly's statements be excluded.

III.    **ARGUMENTS AND ANALYSIS**

A.    **Sixth Amendment Confrontation Clause**

Defendant argues that the admission of O'Reilly's statements would violate the

confrontation clause of the Sixth Amendment because they are testimonial in the sense

2

that they were recorded by an individual operating directly with the police.

In *Crawford v Washington*, 541 U.S. 36 (2004), the Supreme Court indicated that "testimonial" statements involve "a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford,* 541 U.S. at 51. The Court also "explained that testimonial hearsay at a minimum includes 'a formal statement to government officers' by 'an accuser' in the form of an affidavit, a deposition, prior testimony or the like." *United States v Arnold*, 486 F.3d 177, 187 (6th Cir. 2007) (quoting *Crawford,* 541 U.S. at 51-52). In *Davis v Washington*, ___ U.S. ___,126, S. Ct. 2266 (2006), the Supreme Court provided additional guidance concerning the difference between testimonial and nontestimonial statements. In *Davis*, the Court found that "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove events potentially relevant to later criminal prosecution." *Davis*, 126 S. Ct. at 2273-74.

Given the teaching of *Crawford*, Defendant's argument that O'Reilly's statements are "testimonial," is unavailing.

The Sixth Circuit determined that the proper inquiry in deciding whether a statement is testimonial is "whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2005). It could not have been anticipated by O'Reilly that his statements to Nix-Bey would be

used against Defendant.  As a matter of fact, O'Reilly minimized Defendant's participation in the crime.  He stated that Defendant was "expendable" and that the crime could have been committed without him.  *See* Def. Exh. A. at 6-7, 40.  Furthermore, Nix-Bey was not a police officer, but was privy to O'Reilly's statements as his friend and confidant.

O'Reilly's jailhouse admissions are not testimonial in nature within the meaning of *Crawford*.  This argument fails.

**B.      Statement Against Interest Hearsay Exception**

Defendant also argues that the statements made by O'Reilly are excludable because they do not meet the standard for admission as a "statement against penal interest"  under Federal Rules of Evidence 804(b)(3), since they are not sufficiently contrary to O'Reilly's self-interest.

According to Defendant, O'Reilly made his statements to boast, brag and elevate himself in the prison strata.  Defendant also cites to law review articles and California cases for the proposition that committing a crime of violence is often part of a gang initiation ritual.  In addition, he asserts that people lie for a variety of reasons and in prison, traditional social values are inapplicable.  He requests an evidentiary hearing to present expert testimony on this issue.

The Government's position is that O'Reilly's statements fall within this hearsay exception.  Although made in a prison environment, the Government asserts that inmates are keenly aware that other inmates commonly testify against fellow prisoners in order to seek a reduction in sentence for their cooperation with the Government.  As

a result, prison inmates are often "tight lipped" about specific crimes given the real and actual possibility that fellow inmates could tip off law enforcement about crimes "boasted" about in the prison system. Furthermore, according to the Government, the statements made by O'Reilly were against his penal interest because he now faces the possibility of capital punishment or life imprisonment without the possibility of parole.

The Court declines Defendant's request for an evidentiary hearing. There is Sixth Circuit precedent which addresses the reliability of jailhouse informants, which the Court discusses below. Furthermore, that the jailhouse informant may not be able to buy a "get out of jail free card," by working with law enforcement against the Defendant, may be only one fact in the totality of circumstances that must be evaluated to determine trustworthiness. "Trustworthiness" is one of three requirements that must be met under the rules of evidence before a statement is admissible as a statement against penal interest.

Under Rule 804(b)(3),[2] a statement is admissible if "(1) the declarant is

---

[2]Rule 804(b)(3) provides:

The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . .

(3) A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

unavailable to testify; (2) the statement inculpates the declarant; and (3) corroborating

circumstances truly establish the trustworthiness of the statement." *United States v.*

*Franklin*, 415 F.3d 537, 547 (6th Cir. 2005) (citing *United States v. Tocco*, 200 F.3d 401,

415 (6th Cir. 2000)).

The first two requirements are easily met. Defendant is unavailable because the

Government and Defendant believe he will invoke his Fifth Amendment right not to

testify.[3] Secondly, the statements made to Nix-Bey inculpate O'Reilly because he

admitted conspiring to plan the robbery of DFCU, and shooting the guard during the

robbery.

On the third requirement, "[t]o determine whether a statement is sufficiently

trustworthy for admission under Rule 804(b)(3), the court is not to focus on whether

other evidence in the case corroborates what the statement asserts, but rather on

whether there are "'corroborating circumstances which clearly indicate the

trustworthiness of the statement itself.'" *Franklin*, 415 F.3d at 547 (quoting *United States*

*v. Price*, 134 F.3d 340, 348 (6th Cir. 1998)). "[A] co-defendant's self-inculpatory

statement that also inculpates the defendant will satisfy the admissibility standards of

the confrontation clause only if the statement fits within a firmly rooted hearsay

exception or otherwise bears particularized guarantees of trustworthiness." *Franklin*,

415 F.3d at 547 (citing *Ohio v. Roberts*, 448 U.S. 56, 65 (1980) and *Lilly v. Virginia*, 527

---

[3]Defense counsel reserves the right to revisit the availability question at a later
point, especially in the event that O'Reilly testifies in his own trial.

U.S. 116, 124-25 (1999)).[4]

Under Sixth Circuit precedent, a statement against declarant's penal interest is not considered a "firmly rooted hearsay exception." *Franklin*, 415 F.3d at 548. Consequently, O'Reilly's statements must be examined for their particularized guarantees of trustworthiness.

O'Reilly made the self-inculpatory statements during confidential exchanges to someone he thought was his friend and confidant. O'Reilly had no reason to conclude Nix-Bey would reveal them to law enforcement, and O'Reilly did not make them to curry favor with law enforcement or to shift blame to his co-defendants. These circumstances are distinguishable from a situation in which statements are inadmissible because they were made as part of a custodial confession to law enforcement agents. *Compare Lilly*, 527 U.S. at 137-38 (holding that a statement inculpating the declarant and his alleged accomplices is not trustworthy when made as part of a custodial confession to law enforcement agents) *with United States v. Johnson*, 440 F.3d 832, 844-47 (6th Cir. 2006) (holding that tape recorded statements to a jailhouse informant were admissible under Rule 804(b)(3) and bore particularized guarantees of trustworthiness).

Defendant argues that *Johnson* is distinguishable because the statements made in that case were between friends with a longstanding relationship and not simply prison acquaintances. According to Defendant, in such a situation, there would be little need to impress the other individual who probably already knew many of the operative facts

---

[4]*Crawford v. Washington* only overruled *Ohio v. Roberts* as it relates to testimonial evidence. A *Roberts* analysis is used for non-testimonial evidence. *See Crawford*, 541 U.S. at 68.

beforehand.

The Court in *Johnson* did not base its ruling only on the fact that the confidential informant and the declarant were long-term friends. It looked at the totality of the circumstances and found that the statements made by the declarant to the jailhouse informant bore particularized guarantees of trustworthiness because of their relationship, the lack of a reason to lie or deceive the informant about the role played by the participants, and the fact that the declarant was unaware that he was being recorded. *Id.* at 845. Similarly, although O'Reilly and Nix-Bey did not have a long-term relationship, there is no evidence that O'Reilly had a reason to lie or deceive Nix-Bey. And, the fact that O'Reilly was unaware that Nix-Bey was wearing a "wire" makes his statements more trustworthy.

Defendant also cites to Judge Marianne Battani's grant of a writ of habeas corpus on Sixth Amendment grounds for the proposition that the statements implicating Defendant are not admissible. *See Desai v. Booker*, Case No. 05-74243 (E.D. Mich. 2007). In that case, Judge Battani found that although the statements were against the penal interest of the declarant, the particularized guarantees of trustworthiness were not present. However, this was because the totality of the circumstances showed that the declarant was unreliable. The declarant in *Desai* was a drug abuser who may have been on drugs when the statement was made, he was a known liar, and he suffered from hearing loss that required him to read lips to compensate. That fact alone undercut the witness' testimony that the declarant made the statements in a bathroom stall in a loud bar while a band played. For all of those reasons, Judge Battani reasoned there was doubt whether the purported statements had even been made.

8

No such circumstances exist here.  The statements were made.  They were recorded verbatim during a face to face conversation, and there is no evidence that O'Reilly was on drugs or has a tendency to lie.

Defendant further argues that the portions of O'Reilly's statements that implicate persons other than O'Reilly should be redacted since they are not contrary to O'Reilly's interest.  According to Defendant, statements that are not inculpatory are not admissible, even if they are made during the same conversation as the inculpatory ones.  However, guided by *Williamson,* 512 U.S. 594, 600-01 (1994), the Sixth Circuit holds that the statements must be reviewed in the context with which they were made to determine their admissibility.  *Tocco*, 200 F.3d at 415 ("Polizzi's statements about the conspiracy linked himself to the others in the conspiracy, and were therefore against his own penal interest.  Thus, we decline to hold that those statements were rendered inadmissible by virtue of the fact that others were implicated.")

According to O'Reilly's statements, six men were involved in a conspiracy to rob the DFCU.  *See* Def. Exh. A. at 7.  Similar to the *Tocco* statements, O'Reilly's statements linked himself to others in the conspiracy and will not be ruled inadmissible simply because others were implicated.

### C.  Due Process and Fed. R. Evid. 403

Lastly, Defendant seeks to exclude O'Reilly's statements on due process and Rule 403 grounds.  In support, he reiterates confrontation clause requirements and a general statement about the unreliability of statements against penal interest.  *United States v. Linn*, 2007 WL 101665 (N.D. Cal. Jan. 5, 2007) (citing *Davis v. Washington*, 126 S. Ct. 2266, 2274-75 (2006)).

As stated above, non-testimonial hearsay is constitutionally admissible if it bears particularized guarantees of trustworthiness. Furthermore, it is not even subject to a confrontation clause analysis. *See Ohio v. Roberts*, 448 U.S. 56 (1980). Additionally, the court in *Linn* excluded the statements because it was an unreliable hearsay statement made by a known liar, and the court found that the danger of unfair prejudice outweighed the evidence's probative value.

Since there is evidence of trustworthiness, and no evidence that O'Reilly is a known liar or that his statements were unreliable, and Defendant does not specify how the danger of unfair prejudice outweighs the probative value of the statements, this argument is rejected as well.

## IV.    CONCLUSION

The Court **DENIES** Defendant's Motion to Exclude Declarations Against Penal Interest Allegedly Made by Timothy Dennis O'Reilly.

**IT IS ORDERED.**


   /s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  August 23, 2007

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 23, 2007. |
| s/Carol Pinegar |
| Deputy Clerk |